THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division


SCOTT ROSS TAYLOR,

                    Plaintiff,


v.                                    Civil Action No. 4:03cv86


WAL-MART STORES, INCORPORATED
& DIVISIONS AND SUBSIDIARIES,

                    Defendant.


## OPINION AND ORDER


Plaintiff Scott Ross Taylor brought this action pro se against defendant Wal-Mart Stores, Inc., alleging that the termination of his employment violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, and various Virginia statutes.  The matter is before the Court on Wal-Mart's Motion for Summary Judgment.  (Docket No. 29.)  For the reasons set forth below, the motion is **GRANTED.**


## I. Procedural Background

As required by Local Rule 56(B) of this Court, Defendant Wal-Mart included a Statement of Undisputed Material Facts along with its summary judgment motion.  (Docket No. 31.)  In compliance with Local Rule 7(K), Wal-Mart warned Mr. Taylor that

he must specifically identify those facts, if any, that he disputes.  Despite this warning, Mr. Taylor explicitly contested only Wal-Mart's assertion that he never actually filed a request for leave under the Family Medical Leave Act.

If Mr. Taylor had been represented by counsel, then his failure to contest all but one of Wal-Mart's items of undisputed fact would be dispositive.  Local Rule 56(B) allows the Court to "assume that facts identified by the moving party in its listing of material facts are admitted" unless the non-moving party controverts the facts in a counter statement supported by citations to the record.  However, the Fourth Circuit has cautioned that <u>pro se</u> litigants are to be treated with deference. <u>See</u> <u>Ballard v. Carlson</u>, 882 F.2d 93, 96 (4th Cir. 1989).

Mindful of this admonition, the Court conducted a two hour and twenty-five minute hearing on Wal-Mart's motion.  The Court questioned Mr. Taylor about each enumerated "undisputed" fact asserted by Wal-Mart in its pleading.  The questioning revealed that Mr. Taylor has many seemingly legitimate complaints about the way Wal-Mart handled his on-the-job injuries and the resulting workers' compensation claims.  However, the facts material to Wal-Mart's Motion for Summary Judgment on the causes of action raised in this suit are not in dispute.

## II. Factual Background

Scott Ross Taylor began working as a Wal-Mart Heating, Ventilation, and Air Conditioning ("HVAC") Technician in March 1995.  Mr. Taylor was, in his words, a "fix-it" for his area -- whenever a store had trouble with its heating, cooling, or refrigeration, the store manager would call on Mr. Taylor to fix the problem.  Ultimately, Mr. Taylor was responsible for maintaining hundreds of compressors used for the heating, cooling, and internal grocery refrigeration at more than a dozen Wal-Mart Supercenters and Sam's Clubs spread across a broad geographic area.  Mr. Taylor testified that he loved the challenge of being a Wal-Mart HVAC Technician, and the job allowed him to provide well for his family both financially and medically.

Serving as a Wal-Mart HVAC Technician is physically demanding work.  Mr. Taylor was initially able to handle the physical job requirements of a Wal-Mart HVAC Technician, including the stated job requirement of handling components weighing up to one hundred (100) pounds.  This changed when he injured himself at a Sam's Club near Raleigh, North Carolina on April 8, 1999.  While attempting to repair a compressor, Mr. Taylor injured his ankle when he tripped over a gate closure ball and fell to the pavement.

Mr. Taylor's recovery was difficult.  Mr. Taylor consulted with many doctors about his ankle injury, including a podiatrist,

a neurologist, and a surgeon.  A fourth doctor concluded that Mr. Taylor's ankle had not healed properly and therefore required additional treatment and intensive physical rehabilitation.

While recovering from his ankle injury, Mr. Taylor was on "light duty."  Mr. Taylor has no complaints about his work status during this period of time.

Mr. Taylor had to take medical leave again in March 2000, this time for hernia surgery.  Mr. Taylor had an additional surgery on August 8, 2001 to repair a new hernia.

When Mr. Taylor returned to work from his first hernia surgery, Wal-Mart attempted to place him on "salary continuance status" in accordance with company policy.  Salary continuance status would allow Mr. Taylor to receive his base salary while he focused on his recovery.  However, Mr. Taylor objected to the salary continuance status and negotiated a set of light duty policies and guidelines that would govern his work status following surgery.  Because Mr. Taylor's manager did not assign him work during his time on this negotiated status, Mr. Taylor was forced to find work on his own.  In addition to not having the opportunity to earn overtime pay due to the lack of work, Mr. Taylor did not receive an annual pay raise during the time that his work was restricted.

In July 2000, approximately three months after the first hernia surgery, Mr. Taylor received medical clearance to return

to regular, unrestricted work status.  One month later, Mr.
Taylor requested that his doctor place him back under a medical
restriction.  Mr. Taylor felt occasional pain in his ankle and
feared that he would need additional surgery if he continued
working without restriction.  Mr. Taylor underwent a functional
evaluation in September 2000 and, as a result, was restricted
from lifting or carrying any item weighing more than fifty (50)
pounds.

Mr. Taylor testified that he was able to compensate for his
fifty (50) pound lifting and carrying restriction.  For example,
in order to use a thirty-two (32) foot ladder, he would tilt one
end at a time off the side of the truck and then "walk" the
ladder to the side of the store.  On other occasions, Mr. Taylor
would commandeer shopping carts to move his tools to the roof via
an electric winch with a sling attached to the shopping cart.  To
install certain heavier compressors, Mr. Taylor brought a one-
and-a-half ton chainfall from home.  He also employed jib cranes,
fork lifts, and other mechanical devices to accomplish the heavy
lifting required by his work.  To avoid carrying heavy objects,
Mr. Taylor employed slide boards, dollies, and shopping carts to
push or pull them instead.

In addition to the routine use of mechanical aids, Mr.
Taylor was assisted by Wal-Mart HVAC Technicians from other

areas.  However, for most large lifting requirements, Mr. Taylor hired outside contractors at Wal-Mart's expense to assist him.

Mr. Taylor believed that the various arrangements he used to compensate for his lifting restriction worked quite well. Nevertheless, he was unable to fulfill Wal-Mart's expectations of him, and he could not meet his own prior benchmarks.  The situation became more difficult in January 2002 when Wal-Mart management prohibited Mr. Taylor from hiring outside contractors in certain situations.

Mr. Taylor worked under the fifty (50) pound lift restriction from September 2000 until January 22, 2002.  On the latter date, Mr. Taylor injured his abdomen while pushing a compressor at work.  This second on-the-job accident caused Mr. Taylor's doctor to place him under an even more cumbersome medical restriction.  In addition to being barred from lifting or carrying heavy items, Mr. Taylor was now barred from lifting, carrying, pushing, or pulling more than forty (40) pounds.

The new medical restriction made it difficult, if not impossible, for Mr. Taylor to perform his job.  On April 23, 2002, Mr. Taylor met with his two Wal-Mart supervisors to review the job requirements of a HVAC Technician and to discuss strategies that would permit Mr. Taylor to continue working despite his new medical restriction.  The only potential solutions that the trio identified were either to hire outside

6

contractors or to enlist the assistance of Wal-Mart technicians from other areas whenever objects heavier than forty (40) pounds needed to be lifted, carried, pushed, or pulled.  The Wal-Mart supervisors decided that neither alternative was reasonable.

At the conclusion of the April 23, 2002 meeting, Wal-Mart notified Mr. Taylor that the company would terminate his employment as a HVAC Technician, but would continue to pay him his base salary for thirty days, i.e., until May 23, 2002. During this period Wal-Mart's personnel department worked with Mr. Taylor to find a position within the company for which he was qualified, both physically and in terms of skill.  Wal-Mart ultimately offered Mr. Taylor an Assembler position, but he declined the offer.

Mr. Taylor's employment by Wal-Mart ended on May 23, 2002. Mr. Taylor's managers recommended that Wal-Mart rehire him should he choose to re-apply for a new position.  Mr. Taylor filed this action on June 25, 2003.

### III. Standard of Review

The standards courts apply in their consideration of motions for summary judgment are well-established.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Seabulk Offshore, Ltd. v. American Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).

An otherwise proper summary judgment motion will not be defeated by a mere factual dispute between the parties unless the dispute concerns a "genuine issue of material fact." Anderson, 477 U.S. at 247-48; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003). A "material fact" is a fact that might affect the outcome of a party's case. See Anderson, 477 U.S. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001); Commerce Funding Corp. v. Worldwide Sec. Servs. Corp., 249 F.3d 204, 209 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the

nonmoving party's favor.  Anderson, 477 U.S. at 248; Commerce Funding Corp., 249 F.3d at 209-10; Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999).

Summary judgment shall be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; see also Hooven-Lewis, 249 F.3d at 265; Johnson v. Pearson, 316 F. Supp. 2d 307, 313 (E.D. Va. 2004).  The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law.  Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25.  When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19.

In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts

in depositions, answers to interrogatories, and admissions on
file to establish a genuine issue of material fact.  Celotex
Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc.
v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir.
1993); Parker v. Westat, Inc., 301 F. Supp. 2d 537, 540 (E.D. Va.
2004).  However, the nonmoving party must rely on more than
conclusory allegations, "mere speculation," the "building of one
inference upon another," the "mere existence of a scintilla of
evidence," or the appearance of "some metaphysical doubt"
concerning a material fact.  See Anderson, 477 U.S. at 252;
Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co.,
312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins.
Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration,
Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668,
671 (E.D. Va. 2004).  The evidence presented must be such that a
reasonable jury could find in favor of the nonmoving party.
Anderson, 477 U.S. at 252; Retail Servs. Inc. v. Freebies Publ'q,
364 F.3d 535, 542 (4th Cir. 2004); Tao of Sys. Integration, Inc.,
330 F. Supp. 2d at 671.

    Summary judgment is not a "disfavored procedural shortcut."
Celotex Corp., 477 U.S. at 327; Sibley v. Lutheran Hosp. of Md.,
Inc., 871 F.2d 479, 483 n.9 (4th Cir. 1989); Brown v. Mitchell,
327 F. Supp. 2d 615, 628 (E.D. Va. 2004).  Rather, the summary
judgment procedure is properly regarded as an "integral part" of

the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter.  Celotex Corp., 477 U.S. at 327; Sibley, 871 F.2d at 483 n.9; Graham v. Pactiv Corp. Benefits Comm., 301 F. Supp. 2d 483, 491-92 (E.D. Va. 2004).

A court "must take special care" when considering a summary judgment motion in an employment discrimination case because the employer's "motive is often the critical issue."  Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996); Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).  Nevertheless, summary judgment remains an appropriate disposition when the plaintiff is unable to prevail on his or her discrimination claims as a matter of law.  Beall, 130 F.3d at 619; Evans, 80 F.3d at 958-59.

## IV. Analysis

### A.  Americans with Disabilities Act

Congress enacted the Americans with Disabilities Act to provide a national mandate for the elimination of discrimination against the approximately forty-three million (43,000,000) Americans who, at the time of passage, had disabilities.  See 42 U.S.C. § 12101; Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).  The ADA established the federal government

as the major force in enforcing standards on behalf of the disabled and invoked Congress' authority to regulate interstate commerce to address the major areas of discrimination that people with disabilities face on a daily basis.  <u>See</u> 42 U.S.C. § 12101. The ultimate objective of the ADA is the elimination or reduction of the impediments hindering individuals with impairments from contributing to our nation's social, economic, and civic life. <u>See</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 535-36 (2004) (Ginsburg, J., concurring).

One method of achieving Congress' objective is the elimination of employment discrimination based on a disability. <u>See</u> 42 U.S.C. § 12112.  However, Congress did not create a comprehensive job insurance policy for individuals with impairments.  <u>See</u> <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 934 (7th Cir. 1995).  Congress instead carved out a narrow subset of impaired employees that the ADA would cover.  <u>See</u> 42 U.S.C. §§ 12111-12112.  Congress also narrowly defined the steps a business must take to accommodate disabled employees.  <u>See</u> <u>Myers v. Hose</u>, 50 F.3d 278, 283 (4th Cir. 1995) ("In mandating only those modifications that qualify as reasonable, Congress clearly meant to avoid placing employers in an untenable business position.").

The plaintiff in a typical ADA discharge case must prove that (1) he is in the protected class; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a

level that met his employer's legitimate expectations; and (4)
his discharge occurred under circumstances that raise a
reasonable inference of unlawful discrimination.  Ennis v. Nat'l
Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.
1995).  However, when an employer admits that the alleged
disability played a role in the discharge, the plaintiff must
instead establish: (1) that he has a disability; (2) that he was
qualified for the job; and (3) that his termination constituted
discrimination based on the disability.  Tyndall v. Nat'l Educ.
Ctrs., Inc., 31 F.3d 209, 212 (4th Cir. 1994).

     Wal-Mart asserts that Mr. Taylor was terminated due to an
alleged disability, i.e., the inability to lift, carry, push, or
pull more than forty (40) pounds.  In an unusual twist, Mr.
Taylor asserts that Wal-Mart did not terminate him because of a
disability, but instead fired him in retaliation for pursuing his
legal rights in two workers' compensation cases.[1]  Because the

---

[1]    Mr. Taylor's argument that he was discriminated against for
a reason other than his alleged disability exposes the shaky
legal foundation for his ADA claim.  However, the Court need not
resolve the issue of whether a plaintiff can ever prevail under
the ADA when he asserts a reason for termination other than ADA
prohibited discrimination.

actual reason for Mr. Taylor's discharge is disputed, the Court will employ the <u>Ennis</u> analysis.[2]

### 1.  Is Mr. Taylor a Qualified Individual with a Disability?

Mr. Taylor must be a "qualified individual with a disability" in order to be a member of the class protected by the ADA.  <u>See</u> 42 U.S.C. § 12112(a); <u>Ennis</u>, 53 F.3d at 58.  The threshold requirement is that Mr. Taylor have a "disability" as defined by the statute.  <u>See</u> 42 U.S.C. § 12111(8).

An individual has a "disability" under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities, or (2) has a record of such an impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 12102.  In this case, it is undisputed that Mr. Taylor has a physical impairment.  He is unable to lift, carry, push, or pull more than forty (40) pounds without a significant risk of injury.  The key question is whether Mr. Taylor's impairment substantially limits one or more of his major life activities so as to render him "disabled" within the meaning of the statute.  <u>See</u> 42 U.S.C. § 12102.

---

[2]    Although the Court applies the <u>Ennis</u> scheme rather than the direct proof analysis in <u>Tyndall</u>, the Court notes that under the facts of this case, if not every case, a ruling in favor of the defendant under <u>Ennis</u> means that the defendant would also prevail under the <u>Tyndall</u> analysis.

Mr. Taylor does not specify which major life activity his impairment substantially limits.  Due to the deference given Mr. Taylor as a pro se litigant, the Court will attempt to identify the possible major life activities that might be affected by his impairment.  Looking to the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"),[3] the Court finds an argument could be made that Mr. Taylor's impairment restricts the major life activities of "performing manual tasks" and "working."  See 29 C.F.R. § 1630.2(i) ("Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.").

Mr. Taylor's limitation does not substantially limit his major life activity of performing manual tasks.  The term "performing manual tasks," like all of the major life activities, is to be strictly interpreted.  Toyota Motor Mfg., Ky., Inc., 534 U.S. at 197.  In order for Mr. Taylor to be substantially limited in performing manual tasks, his impairment would have to prevent or severely restrict him from doing activities that are of central importance to the daily lives of most people.  See id. at

_____

[3]    As noted by the Fourth Circuit in Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468 n.2 (4th Cir. 2002), the persuasive authority of the EEOC regulations interpreting the ADA is less than clear.  However, in this case neither party disputes the authority of the EEOC regulations, and Mr. Taylor has not asserted any alleged major life activities affected by his impairment.  The Court therefore declines the opportunity, if it exists, to determine what level of deference the regulations are due.

198.  Mr. Taylor has presented no evidence that his inability to safely lift, carry, push, or pull more than forty (40) pounds restricts <u>him</u> in any way from doing activities that are of central importance to <u>his</u> daily life -- much less that it prevents or severely restricts him from doing activities that are of central importance to the daily lives of <u>most</u> <u>people</u>.

Additionally, Mr. Taylor's impairment does not substantially limit his major life activity of working.  In order for an impairment to substantially limit this major life activity, it must preclude Mr. Taylor from not just the job of HVAC Technician or closely related positions, but from a "broad class of jobs." <u>See</u> <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 491 (1999). Mr. Taylor has medical clearance to return to work and asserts that he could perform the job of a HVAC Technician if allowed to operate in essentially a supervisory role.  Due to reasons other than his disability, he has been unable to find such employment. Given these facts and the findings in similar cases,[4] the Court finds that Mr. Taylor has not presented evidence sufficient to establish that his impairment substantially limits his major life activity of working.

---

[4]   <u>See</u> <u>Williams v. Channel Master Satellite Sys., Inc.,</u> 101 F.3d 346, 349 (4th Cir. 1996) (holding as matter of law that twenty-five pound lifting limitation did not constitute significant restriction on ability to "lift, work or perform any other major life activity"); <u>see</u> <u>also</u> <u>Halperin v. Abacus Tech. Corp.,</u> 128 F.3d 191, 200 (4th Cir. 1997) (ruling that twenty pound lifting restriction was not disabling under ADA).

Even if Mr. Taylor could establish that he has a disability, he would still need to present evidence that he is a "qualified individual" in order to be a member of the protected class.  <u>See</u> 42 U.S.C. §§ 12111-12112(a); <u>see</u> <u>also</u> <u>Myers</u>, 50 F.3d at 281.  The analysis for determining whether Mr. Taylor is a "qualified individual" is twofold.  First, the Court must consider whether Mr. Taylor can perform the essential functions of a HVAC Technician.  <u>See</u> <u>Myers</u>, 50 F.3d at 281.  Second, if Mr. Taylor cannot perform those essential functions, then the Court must consider whether he could perform them with a reasonable accommodation.  <u>See</u> <u>id.</u> at 282.

Mr. Taylor concedes that he cannot fulfill the essential job function of lifting up to one hundred (100) pounds, but argues that this particular job function could be performed by others as a reasonable accommodation.  However, an accommodation that requires an employer to hire additional personnel to perform an essential function of plaintiff's job is unreasonable as a matter of law.  <u>See</u> <u>Martinson v. Kinney Shoe Corp.</u>, 104 F.3d 683, 687 (4th Cir. 1997).

## 2.  Was Mr. Taylor Performing His Job to Wal-Mart's Satisfaction?

The third element of Mr. Taylor's <u>prima</u> <u>facie</u> case requires him to prove that he was performing his job at a level that met

the expectations of Wal-Mart.  In addition to being unable to comply with the one hundred (100) pound lifting requirement, Mr. Taylor concedes that his performance was not up to Wal-Mart's expectations.  He attributes this deficiency to getting a "little old" and "tired" and to the limited manpower that Wal-Mart provides to assist its HVAC Technicians.

Whether Wal-Mart was wise in its budgetary allocations to the HVAC Department is irrelevant.  It is not the province of this Court to be the arbiter of sound business judgment.  <u>See</u> <u>Mason v. Avaya Communications, Inc.</u>, 357 F.3d 1114, 1122 (10th Cir. 2004).  Ultimately, the only evidence presented regarding Mr. Taylor's performance establishes that he was not meeting Wal-Mart's expectations.

Mr. Taylor has produced evidence adequate to establish only one element of his <u>prima</u> <u>facie</u> case -- that he was discharged. Without more, the Court must grant Wal-Mart's Motion for Summary Judgment as to the ADA claim.


B.  <u>Family and Medical Leave Act</u>

Mr. Taylor's Brief in Opposition to Wal-Mart's Motion for Summary Judgment contests only the requested dismissal of his ADA claim.  Wal-Mart therefore asks the Court to deem Mr. Taylor as having conceded that summary judgment is appropriate as to the remaining claims.  Even though Mr. Taylor failed to address the

other claims in his pleadings, the Court will nevertheless consider the merits of Mr. Taylor's claims in order to give the utmost deference to a pro se litigant.

Mr. Taylor's second claim alleges that Wal-Mart violated the Family and Medical Leave Act.  The FMLA provides certain employees with up to twelve weeks of unpaid leave for qualified situations.  See 29 U.S.C. § 2612.  To state a cause of action under the FMLA, Mr. Taylor would have to provide evidence proving either a claim of interference or retaliation.  See 42 U.S.C. § 2615; see also O'Connor v. PCA Family Health Plans, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000).

Mr. Taylor alleges two instances of FMLA violations by Wal-Mart.  First, he claims that Wal-Mart improperly allocated leave taken for hernia surgery to his twelve week cap on FMLA leave. Assuming this is true, Mr. Taylor has no cause of action unless he proves that this designation somehow interfered with his ability to take qualified leave under the FMLA at a later time. See 29 U.S.C. § 2615; see also Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90-91 (2002) (requiring plaintiff to show resulting impairment of right rather than just technical violation).  Mr. Taylor provides no such evidence, but instead relies solely on the alleged improper designation.

Second, Mr. Taylor alleges that he was denied FMLA leave in December 2001 and January 2002 when his wife decided to have

surgery.  The surgery was scheduled for January 2002.  Mr. Taylor
testified that he mentioned the possibility of the surgery to his
supervisors during a December 2001 meeting.  They informed him at
that time that taking leave to help care for her would not be a
problem.  When it came time for the surgery, Mrs. Taylor threw a
"major fit" and told Mr. Taylor that she would cancel her surgery
to prevent him from taking the leave because Wal-Mart had not
allowed it in the past.  Mr. Taylor further testified that closer
to the scheduled surgery date his supervisors also told him that
even though he could take the leave, he still had to get his work
done.  Ultimately, Mrs. Taylor cancelled her surgery and Mr.
Taylor never filed a request under the FMLA because he considered
such a request to be a futile act.

Mr. Taylor admits that his wife chose not to have the
surgery.  Therefore, not only was the leave unnecessary, but Mr.
Taylor has presented no evidence that he qualified for FMLA leave
for the time period in question due to a "serious health
condition" of his spouse.  See 29 U.S.C. § 2612(a)(1)(C)
(allowing employee to take leave for care of spouse with serious
health condition); see also 29 U.S.C. § 2611(11) (defining
"serious health condition" as one that either requires inpatient
care or "continuing treatment by a health care provider").

## C.  Virginians with Disabilities Act

Mr. Taylor's claim under the Virginians with Disabilities Act ("VDA"), Va. Code. § 51.5-1 through 51.5-52, suffers from the same defects as his ADA claim.  Because the VDA employs the same standards of liability as the ADA, Mr. Taylor's state claim necessarily fails as well.  See Tyndall, 31 F.3d at 216.

Additionally, the VDA provides only a one year period from the "occurrence of any violation of rights" within which the aggrieved party may file suit.  See Va. Code § 51.5-46(B).  The latest date of any violation alleged by Mr. Taylor is his termination on May 23, 2002.  Mr. Taylor's June 25, 2003 filing of this action falls outside the one year statute of limitations.

## D.  Virginia Code § 40.1-27.1

Mr. Taylor's Complaint summarily alleges a violation of Va. Code § 40.1-27.1, which addresses the computation of absences by an employer who has a policy of discharging employees who are absent from work for a specific number of days.  Va. Code § 40.1-27.1 prohibits such an employer from discharging an employee for absences due to work related injuries under certain circumstances.

No Virginia court has recognized a private right of action for a violation of this statute.  Even if such a private right of action existed, Mr. Taylor has provided no evidence that Wal-Mart

has a policy of terminating HVAC Technicians after a certain number of absences, that Wal-Mart incorrectly computed Mr. Taylor's absences due to injury, or that Wal-Mart terminated him due to excessive absenteeism.  Therefore, Mr. Taylor fails to produce evidence sufficient to establish a <u>prima facie</u> violation of Va. Code § 40.1-27.1.

## E.  Virginia Code § 65.2-308[5]

Mr. Taylor also alleges that Wal-Mart violated Va. Code § 65.2-308 by discharging him solely in retaliation for filing his workers' compensation claims.  To address this claim as well as the following claim, the Court must review the history of Mr. Taylor's various administrative claims against Wal-Mart.

Following his April 8, 1999 accident at the Sam's Club in Raleigh, North Carolina, Mr. Taylor filed a claim with the Workers' Compensation Commission ("Commission") for an award of medical benefits and compensation for partial disability due to his right ankle injury and his first hernia surgery.  Wal-Mart

---

[5]     Va. Code § 65.2-308(A) provides:

No employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title or has testified or is about to testify in any proceeding under this title. The discharge of a person who has filed a fraudulent claim is not a violation of this section.

did not contest liability for the ankle injury, but asserted that Mr. Taylor's hernia problems did not result from the accident.

Wal-Mart employees allegedly told Mr. Taylor at various times following the 1999 accident that he would be terminated if he either refused to take a leave of absence following surgery or pursued treatment for his condition.  Nevertheless, Mr. Taylor in fact refused to take a leave of absence following his surgery. He also obtained medical treatment.  He was not fired, and his medical bills were paid.  Additionally, Mr. Taylor contends that various individuals told him that he could not get a hearing if he pursued either an accounting of the status of his medical bills or a workers' compensation claim, but he was denied a hearing in neither instance.

Wal-Mart did not immediately report Mr. Taylor's 1999 injury to the Commission.  Wal-Mart reported the injury only after Mr. Taylor complained of the issue in May 2000.  This delay placed Wal-Mart in violation of Va. Code § 65.2-900, which requires employers to file a report with the Commission within ten (10) days of receiving an injury report from an employee.

Following a hearing on Mr. Taylor's claim for the 1999 injury, the Commission found in Wal-Mart's favor on the hernia issue and notified Mr. Taylor of his right to an appeal.  Mr. Taylor did not appeal.

On May 26, 2002, three days after leaving Wal-Mart, Mr.
Taylor filed another claim with the Commission.  This claim
involved the January 22, 2002 accident.  The Commission awarded
Mr. Taylor partial disability payments for the period of missed
work, but ruled that he did not suffer any continuing disability
due to the accident.  Mr. Taylor did not appeal this decision.

Finally, Mr. Taylor contends generally that during the
pendency of his workers' compensation claims, Wal-Mart routinely
claimed to have lost or to have not received insurance and
workers' compensation paperwork.  Mr. Taylor claims that this
conduct forced him to expend much wasted effort in pursuing his
rights.

Mr. Taylor was not discharged following his claim for the
1999 injury.  In addition, he does not have any evidence of
retaliation for intending to file a claim for the 2002 injury.
His claim of retaliation is based solely on the closeness in time
between his 2002 injury, notice of his intention to file a claim,
and his discharge.  Under Virginia law, closeness in time alone
is insufficient to establish a prima facie violation of Va. Code
§ 65.2-308.  See Jordan v. Clay's Rest Home, Inc., 253 Va. 185,
193, 483 S.E.2d 203, 207 (1997); see also O'Connell v. Isocor
Corp., 56 F. Supp. 2d 649, 654-55 (E.D. Va. 1999) (finding that
even separation of just one day between insurance interview and

24

termination insufficient to establish <u>prima</u> <u>facie</u> case under Virginia law).

## F.  Improper Handling of Workers' Compensation Claims

Mr. Taylor contends that during the pendency of his workers' compensation claims, Wal-Mart's supervisors and administrators followed neither Wal-Mart's internal policies nor Virginia's workers' compensation laws.

Mr. Taylor's contention seems to implicate Va. Code § 65.2-902 because Wal-Mart was, in fact, late in filing a notice of Mr. Taylor's injury with the Commission.  However, the statute itself specifies a civil fine as the remedy for a violation.  <u>See</u> Va. Code § 65.2-902.  The existence of an express governmental remedy in the statute indicates that a private right of action does not exist.  <u>See</u> <u>School Board v. Giannoutsos</u>, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989) ("One of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise.").

## V. Conclusion

For the reasons stated in this Opinion and Order, the Court **GRANTS** Defendant Wal-Mart's Motion for Summary Judgment.

The Clerk is **DIRECTED** to mail a copy of this Order to plaintiff <u>pro</u> <u>se</u> and to all counsel of record.


**IT IS SO ORDERED.**


                                   _____/s/_____
                                     Walter D. Kelley, Jr.
                                 UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
July 11, 2005